# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

AMARIS S.,

        **Plaintiff,**

    **v.**                                  **Case No. 24-CV-69**

MARTIN O'MALLEY,
**Acting Commissioner of the Social Security Administration,**

        **Defendant.**

---

## DECISION AND ORDER

---

### 1. Introduction

Alleging she has been disabled since December 12, 2019 (Tr. 156-57), plaintiff Amaris S. seeks supplemental security income and disability insurance benefits. Her date last insured was July 1, 2022. (Tr. 158.) After her application was denied initially (Tr. 156-57) and upon reconsideration (Tr. 190-91), a hearing was held before Administrative Law Judge (ALJ) Arman Rouf on December 16, 2022 (Tr. 36-64). On July 28, 2023, the ALJ issued a written decision concluding she was not disabled. (Tr. 7-28.) After the Appeals Council denied Plaintiff's request for review on November 15, 2023 (Tr. 1-6), she filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 6, 8), and the matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Plaintiff "has not engaged in substantial gainful activity since December 12, 2019, the alleged onset date[.]" (Tr. 13.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Plaintiff has the following severe impairments: mixed connective tissue disorder, fibromyalgia, right carpal tunnel syndrome, degenerative disc disease of the lumbar spine, and obesity. (Tr. 13.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled.

20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 15.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, or scaffolds. The claimant can frequently handle, finger and feel with the bilateral upper extremities. The claimant must avoid unprotected heights and dangerous moving machinery.

(Tr. 16-17.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work.

3

20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Plaintiff "has no past relevant work[.]" (Tr. 21.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step the ALJ concluded that there were jobs that Plaintiff could perform, including order clerk (Dictionary of Occupational Titles (DOT) Number 209.567-014); final assembler (DOT Number 713.687-018); and table worker (DOT Number 739.687-182). Therefore, she was not disabled.

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the

ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

### 4.1 Inconsistency and Sedentary Limitation

Plaintiff argues that the ALJ erred in giving allegedly inconsistent weight to the medical consultants' opinions and Plaintiff's own reports. (ECF No. 16 at 8-10) (all citations reflect the ECF pagination.) In doing so, she argues that he further failed to explain his decision not to credit her reports of limitations in sitting. (*Id.*)

Courts afford an ALJ's credibility determination special deference because an ALJ is in the best position to hear, see, and assess claimants. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012); *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)). The court's review is generally limited to "whether the ALJ's determination was reasoned and supported." *Elder*, 529 F.3d at 413. Only if the ALJ's determination lacks an explanation or support such that it may be declared to be "patently wrong" may the court overturn the ALJ's conclusion. *Id.* at 413-14 (quoting *Jens*, 347 F.3d at 213).

In weighing the State agency consultants' opinions, the ALJ stated:

The administrative findings of the State agency consultants Bruce Hallmann M.D. and Mina Khorshidi M.D. are somewhat persuasive (B2A, B4A, B7A, B8A). They found the claimant could perform a full range of light work. On the one hand, their conclusion that the claimant can perform light

5

exertional work is inconsistent with evidence documenting the claimant's subjective allegations of pain, weakness, numbness, tingling and fatigue and her reports of tenderness on examination warrant the restriction to sedentary work with the additional postural and manipulative limitations assigned herein (B2F, B4F, B8F). On the other hand, insofar as their assessment permits sedentary work it is in line with the claimant's relatively good physical examinations showing her to be in no distress with normal joint range of motion, full 5/5 strength in the bilateral upper and lower extremities, normal gait and normal sensation (B2F-53, 102, 121, B4F-128, B5F-59, 67, 71, B8F-41, 44).

(Tr. 20.)

It was not inconsistent for the ALJ to partially credit the medical consultants' reports and partially credit Plaintiff's reports. *See Stepp v. Colvin*, 795 F.3d 711, 720-21 (7th Cir. 2012) (upholding ALJ's "partially adverse credibility finding" that assigned "little weight" to the medical consultant's determination that the claimant could perform light work and instead finding claimant was limited to sedentary work, but also partially discrediting claimant's reports in finding her pain did "not equate to disability"). The ALJ explained his reasoning for his partial credibility finding: he credited Plaintiff's reports of pain, corroborated by the medical evidence of tenderness, to find she was limited to sedentary work instead of light work; but he also credited the medical consultants' reports, corroborated by the objective medical evidence, that she could perform sedentary work and was not totally disabled. (Tr. 20.)

Furthermore, much of the testimony and evidence did not suggest a need to limit Plaintiff's sitting. (Tr. 46 (arguing she is limited in standing, walking, fingering, handling and reaching, and would have difficulty maintaining pace, but not mentioning sitting);

6

Tr. 1023-41 (reporting to physical therapist limitations in standing, walking, and doing chores, including during flare-ups, but not mentioning sitting).)

In light of all of the evidence before him, the ALJ's partial credibility findings for Plaintiff and Doctors Hallmann and Khorshidi were not patently wrong.

### 4.2 Obesity

Plaintiff argues the ALJ failed to consider and explain the combined effects of her obesity and other impairments on her ability to perform sedentary work. (EFC 16 at 10-12.) The Commissioner argues that the ALJ sufficiently considered obesity by finding it to be a severe impairment and implementing limitations for obesity. (ECF No. 24, at 16.)

The ALJ is required to consider obesity and its combined effects with other impairments when assessing a person's RFC. SSR 19-2p; *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014). SSR 19-2p notes that "[t]he combined effects of obesity [with] another impairment(s) may be greater than the effects of each of the impairments considered separately." SSR 19-2p. "[T]he ALJ must specifically address the effect of obesity on a claimant's limitations because, for example, a person who is obese and arthritic may experience greater limitations than a person who is only arthritic." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *see also Goins*, 556 F.3d at 681 (finding plaintiff's "obesity is not disabling in itself[,] [b]ut is an added handicap for someone who has degenerative disc disease, a narrowed spinal canal, bronchitis, and a Chiari I malformation").

However, "an ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work." *Dornseif v. Astrue*, 499 F. App'x 598, 600 (7th Cir. 2013) (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)); *see also Joseph M. v. Saul*, No. 18-cv-5182, 2019 WL 6918281, at *13 (N.D. Ill. Dec. 19, 2019) ("A claimant must explain how his obesity affected his ability to work before an ALJ's failure to adequately discuss obesity will require remand.").

The ALJ found Plaintiff's obesity to be a severe impairment. (Tr. 13.) Plaintiff is 4'11" and has weighed in excess of 185 pounds, giving her a BMI of at least 37. (Tr. 18.) In assessing Plaintiff's impairments, the ALJ stated that he considered her obesity pursuant to SSR 19-2p and that

> a careful review of the record[] shows that the evidence does not support a finding that the claimant's obesity results in the severity of the symptoms or limitations required to medically equal a listing. Further, in this case, no medical expert or treating provider has opined that the claimant's impairment, singly or in combination with others, equals the criteria set forth for any relevant listing.

(Tr. 16.) In calculating her RFC, the ALJ recited boiler plate language from SSR 19-2p and stated he "has taken these factors into consideration at all relevant steps of the sequential evaluation process." (Tr. 18.) He stated he assigned the sedentary limitation "[d]ue to claimant's [impairments] in the context of obesity" and that, "[t]o account for her obesity and reports of numbness/tingling, [he] finds the claimant must avoid unprotected heights and dangerous moving machinery." (*Id.*)

The ALJ's analysis failed to explain the combined impact of Plaintiff's obesity with her other impairments, such as her degenerative disc disease, sciatica, and arthritis, which can create additional difficulties sitting. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (discussing combined impact of obesity and degenerative disc disease); *Villano*, 556 F.3d at 562 (arthritis and obesity); Cleveland Clinic, *Sciatica*, https://my.clevelandclinic.org/health/diseases/12792-sciatica (last visited October 24, 2024) (noting sciatica can cause problems with prolonged sitting); *see also Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014) (finding the ALJ erred in failing to discuss the combined effects of obesity and the plaintiff's leg pain on her ability to perform sedentary work). The ALJ failed to explain how this combination of conditions impacted Plaintiff's ability to perform sedentary work. *See Taylor v. Saul*, No. 19-cv-359, 2020 U.S. Dist. LEXIS 70731, at *18-19 (E.D. Wis. Apr. 22, 2020) (finding error where "the ALJ failed to build an accurate and logical bridge between the evidence and his finding" that "limiting [claimant] to sedentary work would sufficiently accommodate the effects of her … limitations"). This was error.

Having said that, Plaintiff did not point to any evidence suggesting her obesity and other impairments impacted her ability to perform sedentary work. As the Commissioner points out, "[o]besity was not discussed during the hearing …, nor did [Plaintiff] allege it as a condition limiting her ability to work when she originally applied for disability benefits." (ECF No. 24 at 16 (citing Tr. 346)); s*ee Rennaker v. Saul*, 820 F. App'x

474, 481 (7th Cir. 2020) (finding error harmless and consideration of obesity would have been speculative where plaintiff "point[ed] to nothing in the record to support his argument that 'it would be expected' that his obesity would aggravate his [impairments] and diminish his ability to sit …").

The ALJ's error in failing to explain the combined impact of Plaintiff's obesity with her other impairments was harmless. He need not reevaluate Plaintiff's obesity.

### 4.3 Residual Functional Capacity

#### 4.3.1 Variable Functioning

Plaintiff experiences flare-ups in her symptoms from her mixed connective tissue disorder (causing inflammatory polyarthropathy) and fibromyalgia. (Tr. 18.) She argues the ALJ failed to analyze her symptom flare-ups and, in turn, their frequency and effect on her work ability. (ECF No. 16 at 15-16.) The Commissioner contends that the ALJ adequately addressed Plaintiff's flare-ups. (ECF No. 24 at 13.)

An ALJ's RFC assessment must be based on the most the individual can do on a regular basis despite their limitations. SSR 96-8p. In doing so, the ALJ must consider both the person's "bad days and good days." SSR 12-2p; *see also Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012) (explaining that the RFC must be measured by both good and bad days).

In his summary of the Plaintiff's symptoms, the ALJ acknowledged that she experiences symptom flare-ups. (Tr. 18.) But he never explained whether he credited or

discredited evidence of Plaintiff's flare-ups, nor examined their frequency, severity, or overall effect on Plaintiff's limitations. He made some references to Plaintiff's connective tissue disorder and fibromyalgia when summarizing her medical evidence: he cited three medical notes describing Plaintiff's inflammatory polyarthropathy and fibromyalgia as stable and cited a May 2022 visit at which her inflammatory polyarthropathy flare-up was described as mild. (Tr. 19-20.) But these selective references did not analyze Plaintiff's symptom flare-ups more generally.

The ALJ's citations to moments where Plaintiff's symptoms were "stable" does not by itself mean she is capable of work. *Merchant v. Kijakazi*, No. 21-cv-1422, 2022 U.S. Dist. LEXIS 174544, at *6 (E.D. Wis. Sep. 27, 2022); *see also Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("[Plaintiff] could have been in terrible condition immediately after her stroke and still be characterized as 'stable' by her doctor if her condition had not changed over a period of time. ... Simply because one is characterized as 'stable' or 'improving' does not necessarily mean that she is capable of doing light work."). "[A] condition can be stable and disabling at the same time." *Merchant*, 2022 U.S. Dist. LEXIS 174544, at *6 (quoting *Hensley v. Colvin*, No. 14-cv-125, 2015 U.S. Dist. LEXIS 30828, at *12 (S.D. Ind. Mar. 13, 2015)). And the ALJ's reference to a May 2022 visit at which Plaintiff's flare-up was described as mild also does not signify that her condition on a whole was mild. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("[A]ny single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been

treated."). The ALJ's references to individual instances where Plaintiff's symptoms were "stable" or "mild" do not build an accurate and logical bridge from the evidence to a finding that her flare-ups on a whole do not impact her ability to perform work.

More concerning are the ALJ's omissions to instances where Plaintiff *did* experience symptom flare-ups, including severe ones. The ALJ's statement that Plaintiff's May 2022 visit flare-up was mild omitted the following statement: "The patient states that she had horrible flare-up about 3 days ago. It caused spasm in the hands and elbows and forearms. She could not open her hands. They were very stiff and still feeling pain and numbness. Pain is 9/10[.]" (Tr. 1056.) The ALJ also omitted several other references that Plaintiff experienced symptom flare-ups. (Tr. 596, 527, 798); *see also* (Tr. 1014, 1025 (physical therapist notes describing flare-ups)); (Tr. 51, 57-58 (testimony regarding flare-ups).) And although the ALJ included a reference to an emergency room visit for a urinary tract infection (Tr. 19), he omitted any reference to another emergency room visit for Plaintiff's mixed connective tissue disorder flare-up at which she said she had "called [her] rheumatologist but … [could not] wait [until] Monday due to the pain." (Tr. 810.)

The ALJ's omission of references to Plaintiff's symptom flare-ups and inclusion only of instances at which Plaintiff's symptoms were described as "stable" or "mild" was impermissible cherry-picking. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to

a disability finding."); *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) ("The ALJ 'may not select and discuss only that evidence that favors [his] ultimate conclusion,' … but 'must confront the evidence that does not support [his] conclusion and explain why it was rejected.'" (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995), and *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004))).

The Commissioner contends that the ALJ did not err because Plaintiff did not clearly indicate what specific limitations the ALJ should have included, nor did she cite any doctor opinion setting greater limits than the ALJ assessed. (ECF No. 24 at 13-14.)

Plaintiff's burden was "to produce evidence, not necessarily medical opinions." *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) (rejecting Commissioner's argument that it was the claimant's burden to prove the extent of workplace limitations). Plaintiff satisfied that burden by producing evidence of her symptom flare-ups. "If the ALJ found this evidence insufficient, it was [his] responsibility to recognize the need for additional medical evaluations." *Scott*, 647 F.3d at 741; *see also Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016) ("[T]he Commissioner largely relies on the absence of information in [the doctor's] report to establish facts, when the regulations do not require that a consulting physician report all limitations to the ALJ."); *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (ultimate responsibility for determining a claimant's residual functional capacity rests on the ALJ and not on an examining doctor).

The ALJ's failure to explain his analysis of the frequency and severity of Plaintiff's symptom flare-ups and their effect on her limitations was error and requires remand. *Dorian W. v. Berryhill*, No. 17-cv-50327, 2019 WL 1572560, at *3 (N.D. Ill. Apr. 11, 2019) (stating there is a question of "whether plaintiff, who had fibromyalgia, experienced flares and fluctuations in his pain. The ALJ did not explore this possibility, but it should always be considered in a case involving fibromyalgia"); *Heuschmidt v. Colvin*, No. 14-cv-4377, 2015 WL 7710368, *8 (N.D. Ill. Nov. 30, 2015) (the ALJ "failed to note the fluctuating nature of fibromyalgia symptoms that SSR 12-2p describes"); *Farrell*, 692 F.3d at 773 ("[Plaintiff's] RFC should not have been measured exclusively by her best days; when a patient like [plaintiff] is only unpredictably able to function in a normal work environment, the resulting intermittent attendance normally precludes the possibility of holding down a steady job.").

On remand, the ALJ must evaluate the frequency and severity of Plaintiff's flare-ups to determine whether they further limit her RFC.

### 4.3.2 Upper Extremity Limitation

Plaintiff contends that the ALJ failed to explain his reasoning for limiting her to frequently handling, fingering, and feeling with both hands, rather than only occasionally. (ECF No. 16 at 12-14.) Plaintiff also contends that it is illogical that her right hand would not be more limited than her left given that her right hand was additionally limited by carpal tunnel syndrome, and the ALJ did not explain why he did not assess

further limits on her right hand. (*Id.* at 12-13.) The Commissioner again contends there was no error because no doctor opined to any greater manipulative limitation than the ALJ imposed. (ECF No. 24 at 15.)

The ALJ found that Plaintiff suffered from the following severe disorders that affect her arms and hands: mixed connective tissue disorder, fibromyalgia, and right carpal tunnel syndrome. (Tr. 13.) He explained that, "[g]iven [Plaintiff's] upper extremity pain/tenderness and stiffness and right carpal tunnel syndrome, [she] can frequently handle, finger and feel with the bilateral upper extremities." (Tr. 18.)

The ALJ cited some evidence tending to support a finding that Plaintiff's carpal tunnel did not disable her—specifically, evidence that her carpal tunnel syndrome was described as mild in EMG testing and that her Tinel's and Phalen's tests were negative. (Tr. 18-19.) But the ALJ also cited evidence supporting further limitations for both her hands, noting Plaintiff's reports of pain and difficulty using her hands. (Tr. 17 (daily activities reflect she cannot hold items, cook, clean, do chores, or grocery shop due to her worsening condition).) Furthermore, the cited medical reports also note right wrist pain, right arm pain, tenderness in wrist and hand joints, numbness and tingling in wrists, and spasms in her hands, elbows, and forearms. (Tr. 578; 528-29; 597; 632; 354-55; 1057.) Other evidence suggests serious handling limitations as well. (Tr. 57-58 (husband's testimony describing flares of debilitating pain in her hands every two to three weeks, lasting for about 45 minutes).)

When an ALJ is faced with evidence that cuts both ways, the fact that the ALJ chose one side does not suggest error. *Hall v. Saul*, No. 19-cv-1780, 2020 U.S. Dist. LEXIS 226466, at *13 (E.D. Wis. Dec. 3, 2020). But "[a]n ALJ does not comply with his obligation to provide 'specific reasons for the weight given to the individual's symptoms,' SSR 16-3p, by merely recounting the medical evidence and stating a conclusion." *Krevs v. Saul*, No. 18-cv-1742, 2020 U.S. Dist. LEXIS 1236, at *6-7 (E.D. Wis. Jan. 6, 2020). Rather, "[t]he ALJ must connect that medical evidence to his conclusions, or as courts regularly phrase this obligation, an ALJ 'must build a logical bridge from the evidence to his conclusion.'" *Id.* (quoting *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013)); *see also Hernandez v. O'Malley*, No. 23-cv-349, slip op. at 21-22 (E.D. Wis. May 6, 2024) ("While the ALJ acknowledged [plaintiff's] reports … and included restrictions in the RFC to accommodate her [symptoms], it is unclear how those restrictions would adequately address the degree of [her symptoms] indicated in the record. … Remand is necessary so the ALJ can properly explain how he accounted for [plaintiff's] [symptoms] in assessing her RFC.").

While the ALJ acknowledged that Plaintiff experiences difficulties with her hands and included restrictions in the RFC to accommodate such, it is unclear how those restrictions would adequately address the degree of limitation indicated by the record. The ALJ did not explain why he believed that Plaintiff's handling difficulties would be sufficiently accounted for by the restrictions he included in the RFC. As a result, the ALJ did not establish the requisite accurate and logical bridge between the evidence and his

conclusion that the restrictions included in the RFC assessment accounted for Plaintiff's handling difficulties.

As Plaintiff points out, "[t]he ALJ's error was not harmless because if he had considered Plaintiff's reports and the evidence and instead determined that Plaintiff could only occasionally handle, finger, and feel, per the vocational expert's testimony, none of the three jobs the expert identified and ALJ found Plaintiff could perform, at step five, would be available." (ECF No. 13 at 14.) Instead, "the only job that would be available to Plaintiff would be a call-out operator," (*Id.*) a job with 14,000 positions nationally and that may be obsolete. *See Ellis v. Kijakazi*, 553 F. Supp. 3d 628, 635-36 (E.D. Wis. 2021) (14,500 jobs nationally is not a significant number); *Culver v. Saul*, No. 19-cv-1810, 2021 WL 2936310, at *3-4 (E.D. Wis. Jul. 13, 2021) (finding similar positions of charge-account clerk and telephone clerk are antiquated).

Remand is necessary so the ALJ can properly explain how he accounted for Plaintiff's handling difficulties in assessing her RFC. As explained above, this analysis must also consider the flare-ups in these symptoms.

### 4.3.3 Concentration, Persistence, and Pace

Plaintiff contends the ALJ failed to address her "problems sleeping and feeling drowsy during the day and what impact that might have on her ability to perform and sustain work during an eight-hour workday." (ECF No. 16 at 17.) She argues he was required to explain the omission and, if he found Plaintiff worked slower, it would impact

her ability to sustain full-time work. (*Id.* ("[T]he vocational expert testified that if Plaintiff were absent more than twice during the 30-to-60-day probationary period or even once per month thereafter, on a consistent basis, she could not sustain full-time work[;] [and] … if Plaintiff were off task 15 percent or more, of the time, during a normal workday, she would not remain employed.").)

Plaintiff reported difficulties sleeping and feeling drowsy, and her medical records reflected as much. *E.g.*, (Tr. 354; 374-75; 515; 528.) The ALJ made the following statement regarding concentration, persistence, and pace:

> In this area, the claimant has mild limitation. The claimant has reported problems completing tasks (B3E, B6E). However, the claimant retains the capacity for activities demanding some degree of concentration, persistence and maintaining pace. Such activities including shopping in stores, on the phone, by mail, and by computer, driving, managing money, shopping, and reading (B3E, B6E). The treatment notes also do not reflect frequent or significant complaints from the claimant regarding her abilities to sustain focus and attention.

(Tr. 14.) The ALJ mentioned Plaintiff alleged her conditions cause her fatigue (Tr. 19), but he made no other references to Plaintiff's reports of drowsiness from her sleep difficulties and medications.

"[T]he RFC … must incorporate the 'totality of a claimant's limitations,' including any 'deficiencies of concentration, persistence and pace.'" *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)). Although an ALJ generally need not recount every piece of evidence, he may not simply ignore a claimant's testimony of fatigue. *Sherman v. O'Malley*, No. 23-cv-1428,

2023 U.S. App. LEXIS 34044, at *7 (7th Cir. Dec. 22, 2023) (citing *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020)). The ALJ must "discuss [the claimant's] fatigue and how it might affect her job performance." *Ninedorf v. O'Malley*, No. 23-cv-998, 2024 U.S. Dist. LEXIS 108833, at *6 (E.D. Wis. June 20, 2024) (quoting *Rebecca A. v. Kijakazi*, No. 21-cv-3185, 2022 U.S. Dist. LEXIS 204944, at *8 (N.D. Ill. Nov. 10, 2022)); *see also Saucier v. Kijakazi*, No. 21-cv-1441, 2022 U.S. Dist. LEXIS 158837, at *26 (E.D. Wis. Sep. 2, 2022) ("If the ALJ intended the RFC to account for [plaintiff's] fatigue, she must explain how it does so. If the ALJ decided not to credit the evidence of fatigue in her RFC, she must explain why not. *See* SSR 96-8p.").

However, Plaintiff never indicated how her drowsiness may affect her work ability and never suggested any limitations for her drowsiness. Without any evidence that Plaintiff's claimed deficits keep her from performing work-related tasks, any error was harmless. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address [plaintiff's] limitations in concentration, persistence, or pace because [she] hypothesizes none. … [Plaintiff] cites no evidence that those deficits keep him from performing simple, routine, and repetitive tasks."). "Because [Plaintiff] did not testify about restrictions in [her] capabilities related to concentration, persistence, or pace deficits, and the medical record does not support any, there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand." *Id.*

Any error in omitting reference to Plaintiff's drowsiness was harmless and the ALJ need not revisit it on remand.

### 4.4 Symptom Severity

The ALJ must assess a claimant's symptoms (*i.e.*, "the individual's own description or statement of his or her physical or mental impairment(s)") using a two-step process. SSR 16-3p. First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. If step one is satisfied, at step two the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p.

In addition to considering all other relevant evidence, the ALJ must also consider the following factors to the extent they are relevant:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. The ALJ's conclusion is entitled to "special deference," and the court may disrupt it only if that assessment was "patently wrong." *Burmester*, 920 F.3d at 510; *Summers*, 864 F.3d at 528.

The ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not reasonably consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 19.)

He explained that, while Plaintiff "alleges that her conditions cause diffuse and significant pain, weakness, stiffness, numbness and tingling as well as fatigue and that these symptoms substantially interfere with her exertional, postural and manipulative capacities[,]" her "allegations regarding the degree of limitation associated with her symptoms cannot reasonably be accepted as consistent with the objective medical evidence including diagnostic testing, physical examinations and treatment history."

(Tr. 19.)

The ALJ discussed the medical evidence that influenced his opinion and then summarized his conclusions by stating:

> Thus, while the undersigned accepts the claimant's assertion that her conditions cause symptoms and limitations, the undersigned finds that the objective medical evidence and other evidence of record is not consistent with the degree of limitation alleged. Given the claimant's reasonably good physical examinations, the mild nature of the carpal tunnel syndrome, and the limited treatment for her carpal tunnel and spine conditions, the undersigned finds that the claimant can perform the sedentary work articulated in the assigned residual functional capacity.

(Tr. 20.)

Plaintiff first argues that the ALJ mischaracterized the record and was impermissibly selective in reviewing Plaintiff's symptoms by stating her inflammatory polyarthropathy and fibromyalgia were stable and by finding she had full strength, no spine tenderness, and normal spine range of motion. (ECF No. 16 at 19-20.)

As explained above, the ALJ's analysis of Plaintiff's mixed connective tissue disorder and fibromyalgia flare-ups was impermissibly selective. As to the ALJ's strength summary, he did not ignore evidence of Plaintiff's limited grip strength; he included in his discussion the same evidence Plaintiff cites for having limited strength. (Tr. 20 (citing Tr. 1105).) But this one instance at which Plaintiff exhibited limited strength contrasts with several other visits at which Plaintiff demonstrated full strength. (Tr. 19-20.) The ALJ's summary of this evidence as showing that Plaintiff has "full strength" is not made an error because of one instance of decreased strength among several normal exams. *See*

*Hall*, 2020 WL 7074474, at *5 ("Faced with evidence that cuts both ways, the fact that the ALJ chose one side does not suggest error.").

As to the ALJ's analysis of spinal motion and tenderness, he omitted a reference to one occasion on which Plaintiff had decreased spinal motion and tenderness in her spine (Tr. at 945).[1] While "[t]he ALJ need not ... provide a 'complete written evaluation of every piece of testimony and evidence,'" he "may not select and discuss only that evidence that favors [his] ultimate conclusion." *Stephens*, 888 F.3d at 329 (quoting *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005), and *Diaz*, 55 F.3d at 307). But, again, overlooking one instance of abnormality among numerous normal exams (Tr. 19-20) is not an error. *See Hall*, 2020 WL 7074474, at *5; *see also Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (finding an ALJ who only mentioned normal findings and did not expressly list all findings did not err because the omitted evidence "did not reveal any substantially different information about [plaintiff's] … problems than did the evidence that the ALJ addressed"). Thus, the ALJ did not mischaracterize the evidence in finding Plaintiff had full strength, no spine tenderness, and normal spine range of motion.

Next, Plaintiff contends the ALJ erred in finding her carpal tunnel and back condition treatments were "conservative." (ECF No. 16 at 20-21.) The ALJ stated:

As to her right carpal tunnel syndrome, the condition is mild per an EMG (B8F-41). Further, Tinel's and Phalen's tests were negative (B2F-53) and, as

---

[1] Plaintiff also argues that the ALJ overlooked evidence of spinal tenderness indicated at Tr. 554. (ECF No. 16 at 18.) This citation is to an ER visit noting tenderness in the side of her neck, and it was not error for the ALJ to omit it in discussing tenderness of her back.

documented in the preceding paragraphs, examinations typically showed normal peripheral joint range of motion and full strength in her upper extremities. Moreover, treatment for the carpal tunnel syndrome has remained conservative with bracing. In terms of her spine condition, the above discussion documents examinations showing no point tenderness or spasm, normal range of motion, full strength and sensation, and a normal unaided gait. Moreover, providers have approached her back condition with conservative treatment measures.

(Tr. 20.)

While an ALJ can consider "the frequency or extent of the treatment sought" in evaluating the credibility of the claimant's symptom allegations, SSR 16-3p, the Seventh Circuit Court of Appeals has held that an ALJ must not draw any inferences about a claimant's condition from the claimant's failure to pursue further medical treatment unless the ALJ explored the claimant's explanations for her lack of medical care. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *see also* SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record … without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. … We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.").

The ALJ stated that Plaintiff's carpal tunnel treatment was "conservative with bracing" and that her back condition was approached with "conservative treatment" (Tr. 18), but he did not consider whether more aggressive treatment was appropriate or Plaintiff's reasons for not pursuing such treatment. *See Jones v. Colvin*, No. 12-cv-6151, 2015 WL 7568366, at *7 (N.D. Ill. Nov. 25, 2015) (noting that, without "medical evidence

about what kind of treatment would be appropriate," "the ALJ was forced to [impermissibly] play doctor to draw his own conclusion regarding the appropriate level of treatment"). Plaintiff's carpal tunnel and back condition treatments are in line with treatments courts have considered conservative. *See Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (steroid injections for back pain); *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) (injections); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (pain medications, injections, and physical therapy); *Lopez*, 336 F.3d at 537 (carpal tunnel treatment by medication and physical therapy); *Elektra P.-S. v. O'Malley*, No. 22-cv-726, 2024 WL 973762, at *6 (N.D. Ill. Feb. 27, 2024) (physical therapy and spinal injections). But the ALJ erred in failing to explore Plaintiff's explanations for not pursuing more invasive treatment. *See Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) ("[T]he ALJ may not draw any inferences 'about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.'" (quoting *Craft*, 539 F.3d at 679)).

Nonetheless, the ALJ's finding that Plaintiff's carpal tunnel was mild was supported by an EMG test, negative Tinel's and Phalen's tests, and physical exams, and his finding that her back condition was mild was supported by numerous physical exams. (Tr. 20); *see also* SSR 16-3p ("[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms

are less likely to reduce his or her capacities to perform work-related activities …."); *Bakke v. Kijakazi*, 62 F.4th 1061, 1067 n.3 (7th Cir. 2023) (finding any error was harmless because the "conservative course of treatment was clearly not the crux of his conclusion"). Plaintiff does not articulate how the ALJ's characterization of her treatment as conservative caused her any harm given the evidence in the record that her conditions were mild. *See Deborah M.*, 994 F.3d at 790 (finding any error was harmless where "[p]laintiff has not shown that [the conservative treatment finding] caused any harm … because she has not pointed to anything in the record to show that her doctors considered more invasive treatments, nor has she identified any specific reason that she did not seek more treatment."). The ALJ's findings that Plaintiff's carpal tunnel and back condition were mild were supported by substantial evidence and the ALJ need not re-examine them on remand.

Plaintiff also argues the ALJ erred in "discount[ing] the significance of examination findings of tenderness, in favor of objective signs." (ECF No. 16 at 19.) The Commissioner responds that objective evidence is important even when assessing fibromyalgia and that "it was reasonable for the ALJ to conclude that the objective evidence did not reveal the presence of disabling symptoms." (ECF No. 24 at 8-9.)

The ALJ limited Plaintiff to sedentary work in part due to her reports of tenderness. (Tr. 18.) But in rejecting further limits on sedentary work and handling, he implicitly discounted evidence that Plaintiff's tenderness further limited her, reasoning that "her symptoms cannot reasonably be accepted as consistent with the objective

medical evidence including diagnostic testing, physical examinations and treatment history." (Tr. 19.) In doing so, he relied on "examinations show[ing] her to be in no distress with 5/5 strength, normal spine range of motion, no spine tenderness or spasm, intact sensation, normal gait/no evidence of use of an assistive device, and good range of motion and no synovitis of her peripheral joints." (*Id.*)

As Plaintiff points out, the main sources of her pain are the symptoms associated with her fibromyalgia and mixed connective tissue disorder, both causing pain and tenderness. (ECF No. 16 at 19.) Objective medical evidence is particularly non-indicative of the severity of fibromyalgia, whose primary objective evidence is tenderness on examinations. *Apke v. Saul*, 817 F. App'x 252, 258 (7th Cir. 2020) ("Courts have recognized that often there is no objective medical evidence indicating the presence or severity of fibromyalgia."); *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) ("The extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment."); *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (same). Individuals who suffer from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers v. Comm'r*, 486 F.3d 234, 244 (6th Cir. 2007) (quoting *Preston v. Sec'y of Health & Hum. Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)).

But the problems with objective evidence in fibromyalgia cases does not mean the ALJ cannot consider it. As the Court of Appeals for the Seventh Circuit has explained:

> The Social Security Administration's guidance on evaluating fibromyalgia,
> *see* SSR 12-2P, limits only the evidence used to diagnose the disease as a

medically determinable impairment (step two in the five-step analysis). It does not limit the evidence an ALJ can consider in evaluating the severity of fibromyalgia for purposes of determining a residual functioning capacity. Further, the Social Security Administration's guidance on how to evaluate pain (fibromyalgia's chief symptom) directs ALJs to consider the very symptoms that the ALJ considered here. *See* 20 C.F.R. § 404.1529(c)(2) ("[E]vidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms.").

*Gebauer v. Saul*, 801 F. App'x 404, 410 (7th Cir. 2020).

While the ALJ may consider objective evidence, he may not reject the limiting effects of fibromyalgia solely based on objective evidence. *See Vanprooyen*, 864 F.3d at 572 (stating it was error for the ALJ to reject an opinion because it relied on subjective reports of fibromyalgia pain rather than objective medical evidence); *Gerstner*, 879 F.3d at 264 (finding ALJ erred in discounting fibromyalgia pain complaints based on objective evidence that are consistent with fibromyalgia, "reveal[ing] that [the ALJ] misunderstood the nature of her fibromyalgia pain"); *see also Stark v. Colvin*, 813 F.3d 684, 687-88 (7th Cir. 2016) ("Testimony of severe pain cannot be disregarded simply because it is not supported by objective medical evidence.").

The ALJ only cited objective medical evidence, such as strength and range of motion, as his reasoning for apparently discounting any further limitations from Plaintiff's fibromyalgia. He was required to consider Plaintiff's subjective reports of pain and tenderness exams along with the objective medical evidence. SSR 16-3p. While it was not error for the ALJ to consider the objective medical evidence, it was error to rely on it

as the sole basis for discounting Plaintiff's fibromyalgia tenderness exams and reports of further limitations because the cited evidence is not inconsistent with fibromyalgia limitations. The claimant's own reports are also important for assessing fibromyalgia limitations. *See Apke*, 817 F. App'x at 258 ("In the absence of objective medical evidence, the severity of fibromyalgia symptoms may be evaluated based on the claimant's subjective statements regarding the impairment." (citing SSR 12-2p; SSR 16-3p)). "A medical expert may [also] be especially helpful," considering "a condition[] like fibromyalgia[] [is] marked by subjective and fluctuating symptoms." *See Gebauer*, 801 F. App'x at 409. On remand, the ALJ must reassess Plaintiff's fibromyalgia limitations without relying solely on objective medical evidence that is not inconsistent with fibromyalgia pain.

Plaintiff argues that the ALJ should have considered her medical prescriptions as supporting that her pain was significant. (ECF No. 16 at 20-21.) Indeed, "evidence of prescriptions for strong pain medications, epidural injections, … and physical therapy" are objective evidence of pain. *Stark*, 813 F.3d at 687-88; *see also Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (noting the ALJ should have considered evidence including the claimant's use of strong narcotics to treat her pain). The ALJ did not include a discussion of Plaintiff's prescriptions and treatments[2] in his RFC analysis, failing to consider that her

---

[2] Plaintiff's treatment included "a weekly Methotrexate injection, Plaquenil, Cymbalta, Baclofen, Tizanidine, Gabapentin, Hydroxyzine, Duloxetine, Wellbutrin, Metoprolol, Toprol, Bupropion, and Lexapro, … periodic steroid injections for flare ups of her pain," and physical therapy. (ECF No. 16 at 21

treatments corroborated her reports of pain. On remand, the ALJ must consider Plaintiff's treatments, which tend to corroborate her subjective reports of pain.

Finally, Plaintiff briefly argues that the ALJ failed to discuss the following regulatory factors: precipitating and aggravating factors of her symptoms, side effects of medication and medication effectiveness, and her daily activities. (ECF No. 16 at 22); *see also* SSR 16-3p. Plaintiff does not point to any precipitating or aggravating factors that the ALJ failed to discuss, so this argument fails. As to her medications, Plaintiff argues the ALJ failed to consider that her medications "caused her to feel drowsy, and they did not completely relieve her pain." (ECF No. 16 at 22.) As explained above, the ALJ's failure to discuss Plaintiff's drowsiness was harmless error because Plaintiff did not point to any way in which her drowsiness impacted her work-abilities. The ALJ also did not fail to consider that Plaintiff's medications did not completely resolve her symptoms because he analyzed her symptoms in light of their state on medication, and he even added a sedentary limitation to account for these symptoms. (Tr. 18.)

As to Plaintiff's daily activities, the ALJ summarized Plaintiff's limited daily activities but did not discuss them in his conclusion and explanation. (Tr. 17, 19.) Plaintiff's daily activities reflect serious difficulties using her hands, including difficulties holding items and writing. (Tr. 17.) These activities tend to corroborate Plaintiff's reports

---

(citing Tr. 486; 515; 527-29; 577-78; 597-98; 798-99; 801; 830; 866; 898-99; 920; 942-43; 954-55; 986-87; 1053-56)); (Tr. 18.)

of difficulties handling items, and the ALJ was not permitted to ignore this line of evidence in his conclusion. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (ALJ "may not ignore entire lines of evidence"). On remand, the ALJ must include a discussion of Plaintiff's daily activities, including her difficulties grasping items, in his analysis of her limitations.

**5. Conclusion**

Given the deficiencies in the ALJ's assessment of Plaintiff's symptom flare-ups, on remand he must reassess whether Plaintiff's mixed connective tissue disorder and fibromyalgia flare-ups further limit her work ability considering their frequency and severity.

Additionally, because the ALJ did not adequately explain Plaintiff's limitations in handling, fingering, and feeling with the bilateral upper extremities, on remand the ALJ must explain how he evaluated the evidence of Plaintiff's limitations in that area and how her RFC reflects those limitations (taking into consideration her symptom flare-ups).

In assessing the evidence of Plaintiff's limitations from her fibromyalgia, the ALJ may not rely solely on objective medical evidence, such as strength and range of motion, that are not inconsistent with Plaintiff's alleged limitations. The ALJ must also include a consideration of Plaintiff's treatments and daily activities in his RFC analysis.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 29th day of October, 2024.

WILLIAM E. DUFFIN
U.S. Magistrate Judge